Jay Edelson[*]
Rafey S. Balabanian[*]
Steven Lezell[*]
KAMBEREDELSON, LLC
350 N. LaSalle Ave
Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

[*] Pro hac vice admittance to be sought

Marc Cook
Bailus Cook & Kelesis
400 S. 4th St.
Suite 300
Las Vegas, NV 89101
Tel: (702) 385-3788
Fax: (702) 737-7712

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TOMO STEPHENS, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HARRAH'S ENTERTAINMENT, INC. a Delaware corporation d/b/a CAESAR'S PALACE HOTEL AND CASINO,<br><br>Defendant. | Case No.<br><br>Judge<br><br>Magistrate Judge<br><br><br>**DEMAND FOR JURY TRIAL**<br><br>**CLASS ACTION** |

**CLASS ACTION COMPLAINT**

Plaintiff, TOMO STEPHENS, brings this Class Action Complaint against Defendant HARRAH'S ENTERTAINMENT, INC. d/b/a CAESAR'S PALACE HOTEL AND CASINO. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF ACTION**

1. Second-hand smoke refers to smoke from cigarettes and cigars that is exhaled or otherwise released into the atmosphere. Non-smokers who are exposed to second-hand smoke inhale the same chemicals that smokers inhale.[1] Second-hand smoke has been designated as a known human carcinogen (cancer-causing agent) by the U.S. Environmental Protection Agency, the National Toxicology Program, and the International Agency for Research on Cancer, as well as an occupational carcinogen by the National Institute for Occupational Safety and Health.[2]

2. A multi-year investigation by the National Institute of Occupational Safety and Health ("NIOSH") of second-hand smoke levels in three Casinos in Las Vegas, including Defendant CAESAR'S PALACE, was released in May 2009. The study found that chemicals found in second-hand smoke exist both on casino floors and in the bloodstreams of casino

---

[1] *See* Office of the Surgeon General, *available at URL* http://www.surgeongeneral.gov/library/secondhandsmoke/factsheets/factsheet1.html. (last visited July 14, 2009).

[2] *Id.*

employees who work on the gaming floor.[3]  NIOSH recommended that casinos ensure ventilation systems are working properly, create health and safety committees for employees, and ban smoking on casino floors. [4]

3. Recognizing the dangers of second-hand smoke, some casinos in Nevada have voluntarily taken measures to minimize the amount of second-hand smoke on their gaming floors.  The Bellagio Hotel and Casino, for example, has installed a high-tech air filtration system designed to minimize the amount of second-hand smoke on their casino floors.  The Palazzo Hotel and Casino built "smoke-free corridors" through their casino and designated fifty-percent of their casino floor as non-smoking.  Even CAESAR'S PALACE has acknowledged the dangers of second-hand smoke, as it has made at least some of its poker rooms smoke-free.

4. Despite overwhelming scientific evidence, CAESAR'S PALACE has failed to protect the health and welfare of many of its employees who must perform their jobs while breathing in second-hand smoke.  Employers have a duty to provide their employees with a safe workplace.  CAESAR'S PALACE is failing their employees, and breaching its duty to them, by not taking reasonable steps to minimize exposure to second-hand smoke.  Plaintiff brings this action to ensure the health and welfare of all casino employees at CAESAR'S PALACE.

---

[3] Chandran Achutan *et al*., Department of Health and Human Services, Environmental and Biological Assessment of Environmental Tobacco Smoke Exposure Among Casino Dealers, iv (2009).

[4] *Id*.

**EFFECTS OF SECOND-HAND SMOKE**

5. The dangers of second-hand smoke have been acknowledged since at least 1972.[5] The Surgeon General said in a 2006 study, "[t]oday, massive and conclusive scientific evidence documents adverse effects of involuntary smoking on children and adults, including cancer and cardiovascular diseases in adults, and adverse respiratory effects in both children and adults."[6]

6. Second-hand smoke contains more than fifty cancer-causing chemicals.[7] Non-smokers inhale many of these chemicals when they are exposed to second-hand smoke. The Surgeon General estimated that in 2005 exposure to second-hand smoke killed over 3,000 non-smokers due to lung cancer and approximately 46,000 non-smokers from coronary heart disease.[8]

7. The Surgeon General has found that exposure to second-hand smoke has immediate adverse effects on the cardiovascular system of non-smokers and that it causes injury to the respiratory tract of non-smokers.[9]

8. A casual relationship also exists between exposure to second-hand smoke and odor annoyance and nasal irritation.[10] There is also a casual connection between exposure to second-hand smoke and acute respiratory symptoms such as coughing, wheezing, chest tightness, and

---

[5] Department of Health and Human Services, <u>The Health Consequences of Involuntary Exposure to Tobacco Smoke, A Report of the Surgeon General</u>, iii (2006).

[6] *Id*. at iii

[7] *Id*. at 10

[8] *Id*. at i

[9] *Id*. at iv, 9

[10] *Id*. at 13

difficulty breathing among healthy adults. [1]

## PARTIES

9. Plaintiff TOMO STEPHENS is a resident of Nevada.

10. Upon information and belief, Defendant HARRAH'S ENTERTAINMENT, INC. is and was at all times relevant to this action a corporation incorporated and existing under the laws of the state of Delaware. HARRAH'S ENTERTAINMENT, INC. does business in Clark County, Nevada as CAESAR'S PALACE HOTEL AND CASINO.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to the instant action.

12. Specifically, the cost and value of the injunction sought exceeds $5,000,000 exclusive of interest and costs.

13. Venue is proper before this Court under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c).

## GENERAL ALLEGATIONS

14. The gaming area at CAESAR'S PALACE HOTEL AND CASINO consists of table games (e.g., blackjack, craps, and roulette), as well as slot machines and other gaming devices.

15. Numerous employees work in the gaming area at CAESAR'S PALACE including casino dealers, pit supervisors, cocktail servers, security officers, and managers.

---

[1] *Id.* at 13

16. The gaming area is open for business to the public twenty-four hours a day, seven days a week.

17. Smoking is permitted in the gaming area at CAESAR'S PALACE twenty-four hours a day, seven days a week.

18. Employees who work in the gaming area generally work eight-hour shifts.

19. While working, employees in the gaming area are continually exposed to second-hand smoke.

20. Since HARRAH'S ENTERTAINMENT, INC. began managing CAESAR'S PALACE, non-smoking gaming areas have been removed from the gaming floor.

21. The management at CAESAR'S PALACE forbids employees in the gaming area to designate certain tables as "smoke-free."

22. Employees are also forbidden by CAESAR'S PALACE to request that any customer blow smoke away from the table or ask that customers move their ashtrays.

23. Further, CAESAR'S PALACE encourages its customers to smoke. Employees walk the gaming floor selling cigars and cigarettes. CAESAR'S PALACE provides cigarettes at no cost to gamblers who continue to play at their casino.

24. Employees at CAESAR'S PALACE are forbidden from complaining about the amount of second-hand smoke that they are forced to inhale and risk losing their jobs if they dissent.

25. Exposure to second-hand smoke on the casino floor at CAESAR'S PALACE causes numerous deleterious health effects, including:

    a. red, irritated, watery eyes;

    b. coughing and sore throat;

  c. shortness of breath;

  d. dizziness;

  e. wheezing or tightness in the chest;

  f. headache;

  g. nausea; and

  h. ingestion of cancer-causing chemicals and toxins.

 26. The NIOHS study of CAESAR'S PALACE found that the adverse health effects listed above afflicted casino employees working on the gaming floor to a greater degree than employees not exposed to second-hand smoke. [12]

 27. Defendant CAESAR'S PALACE is aware of the health risks posed by exposure to second-hand smoke.

 28. Curiously, HARRAH'S ENTERTAINMENT operates a Health and Wellness Center for its employees in Las Vegas, Nevada.  According to HARRAH'S chairman Gary Loveman, "[t]his center is an example of our company providing the programs and support our employees and their families need to make healthy decisions and ensure high-quality health care."[13]

 29. Unfortunately, employees in the gaming area at CAESAR'S PALACE have no choice but to inhale second-hand smoke for the entirety of their employment.  Informational pamphlets detailing the dangers of second-hand smoke, which were initially available at the

---

[12] Chandran Achutan *et al*., Department of Health and Human Services, Environmental and Biological Assessment of Environmental Tobacco Smoke Exposure Among Casino Dealers, iv (2009).

[13] Harrahs Opens Employee Health and Wellness Center, *available at URL* http://www.thefreelibrary.com/Harrah%27s+Opens+Employee+Health+and+ Wellness+Center-a0156655680 (last visited July 16, 2009)

Defendant's Wellness and Medical Center, have since been removed.

30. Despite having the knowledge that second-hand smoke is damaging the health of its employees, CAESAR'S PALACE has failed to adequately address the problem of second-hand smoke in the gaming area of its casino. Specifically, CAESAR'S PALACE has failed to:

    a.    designate certain sections of the gaming area as smoke-free;

    b.    restrict the times in which smoking is permitted in the gaming area;

    c.    physically separate certain parts of the gaming area and designate them as smoke-free;

    d.    install effective air filtration/purification systems which act to minimize the amount of second-hand smoke in the air;

    e.    monitor the health and welfare of its employees who are exposed to second-hand smoke and take steps to assist those adversely affected by second-hand smoke; and

    f.    take any other necessary steps to mitigate the dangers posed by second-hand smoke.

**ALLEGATIONS AS TO NAMED PLAINTIFF**

31. Plaintiff Tomo Stephens worked at CAESAR'S PALACE Hotel and Casino as a blackjack dealer for approximately twenty years.

32. Ms. Stephens performed her job duties in the gaming area at CAESAR'S PALACE.

33. While working at CAESAR'S PALACE, Ms. Stephens was continually exposed to second-hand smoke.

34. As a direct and proximate result of exposure to second-hand smoke, Ms. Stephens has suffered negative health effects, including:

   a. red, irritated, watery eyes;

   b. coughing and sore throat;

   c. shortness of breath;

   d. dizziness;

   e. wheezing or tightness in the chest;

   f. headache;

   g. nausea; and

   h. ingestion of cancer-causing chemicals and toxins.

35. On June 16th, 2009, on the advice of her physician, Ms. Stephens was forced to quit her job at CAESAR'S PALACE due to the existence of pre-cancerous cells in her stomach.

36. Ms. Stephens's physician informed her that exposure to second-hand smoke would aggravate her stomach condition.

37. When Ms. Stephens resigned, CAESAR'S PALACE refused to provide her severance or offer her alternate employment in an area not exposed to second-hand smoke.

38. Because she is unable to work at CAESAR'S PALACE, Ms. Stephens is in danger of losing her home to foreclosure.

39. Ms. Stephens desires to return to work at CAESAR'S PALACE if the unsafe levels of second-hand smoke are mitigated.

**CLass Certification Allegations**

40.     Plaintiff seeks certification of a class (the "Class") under Rule 23(b)(2), defined as follows: "All former, current, and future nonsmoking employees of CAESAR'S PALACE who were, are, or in the future will be exposed to unsafe levels of second-hand smoke." Excluded from the Class is 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current or former, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

41.     On information and belief, there are over one-thousand members of the Class. As such, individual joinder is impracticable.

42.     Common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members.

These common questions include:

(a)     Whether Defendant has a common-law duty to provide a safe workplace;

(b)     Whether Defendant has a statutory duty under N.R.S. 618.375 to provide a safe workplace;

(c)     Whether, as part of its duty to provide a safe workplace, Defendant had to mitigate the dangers posed by second-hand smoke;

(d)     Whether Defendant took adequate steps to curtail the danger of second-hand smoke; and

(e)     Whether the Plaintiff and the Class are entitled to relief, and the nature of such relief.

43.     Plaintiff's claims are typical of the claims of other members of the Class. Their

claims arise out of the wrongful conduct of the Defendant and are based upon the same transactions made uniformly to Plaintiff and her Class.

44. Plaintiff will fairly and adequately represent and protect the interests of the Class members, and she has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class.

45. This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole. The policies of the Defendant challenged herein apply to and affect members of the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiff.

## COUNT I

## FAILURE TO PROVIDE A SAFE WORKPLACE

**(By Plaintiff individually and on behalf of the Class)**

46. Plaintiff realleges and incorporates the foregoing allegations as though set forth fully herein.

47. The Defendant has a duty under common law to maintain a workplace that is in a reasonably safe condition for its employees.

48. The Defendant has breached this duty by failing to take reasonable precautions to protect its employees from exposure to second-hand smoke.

49. Specifically, the Defendant has breached this duty in the following ways:

    a.    failing to designate certain sections of the gaming area as smoke-free;

      b.     failing to restrict the times in which smoking is permitted in the gaming area;

      c.     failing to physically separate certain parts of the gaming area and designating them as smoke-free;

      d.     failing to install effective air filtration/purification systems which act to minimize the amount of second-hand smoke in the air;

      e.     failing to monitor the health and welfare of its employees who are exposed to second-hand smoke, and failing to take steps to assist those adversely affected by second-hand smoke; and

      f.     failing to take any other necessary steps to mitigate the dangers posed by second-hand smoke.

50.    As an actual and proximate result of Defendant's breach, Plaintiff and other members of the Class have suffered and continue to suffer damages.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

      a.     Enter an order enjoining the Defendant to take reasonable measures to protect its employees from second-hand smoke;

      b.     Enter an order requiring the Defendant to make informational pamphlets detailing the dangers of second-hand smoke available at Defendant HARRAH'S Health and Wellness Center;

      c.     Enter an order awarding Plaintiff and the Class costs and reasonable attorney's fees associated with the prosecution of this action;

      d.     Award any and all further relief provided by law that this Court deems equitable and just.

# COUNT II

# BREACH OF STATUTORY DUTY TO PROVIDE A SAFE WORKPLACE

# (N.R.S. 618.375)

# (By Plaintiff individually and on behalf of the Class)

51. Plaintiff realleges and incorporates the foregoing allegations as though set forth fully herein.

52. The Defendant has a statutory duty, pursuant to Nevada Revised Statutes (N.R.S.) 618.375 to provide a safe workplace.

53. N.R.S. 618.375 states in relevant part:

Every employer shall:

(1) Furnish employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.

(2) Furnish and use such safety devices and safeguards, and adopt and use such practices, means, methods, operations and processes as are reasonably adequate to render such employment and places of employment safe and comply with all orders issued by the Division.

(3) Post prominently in the working place all posters and information provided by the Division informing employees of their rights and obligations pursuant to this chapter.

(4) Assign at least one person to be in charge of occupational safety and health.

(5) Do every other thing reasonably necessary to protect the lives, safety and

health of employees.

54. The Defendant has breached this duty by failing to take reasonable precautions to protect its employees from exposure to second-hand smoke, a recognized hazard.

55. Specifically, the Defendant has breached this duty in the following ways:

    a. failing to designate certain sections of the gaming area as smoke-free;

    b. failing to restrict the times in which smoking is permitted in the gaming area;

    c. failing to physically separate certain parts of the gaming area and designating them as smoke-free;

    d. failing to install effective air filtration/purification systems which act to minimize the amount of second-hand smoke in the air;

    e. failing to monitor the health and welfare of its employees who are exposed to second-hand smoke, and failing to take steps to assist those adversely affected by second-hand smoke; and

    f. failing to take any other necessary steps to mitigate the dangers posed by second-hand smoke.

56. As an actual and proximate result of Defendant's breach, Plaintiff, and other members of the class have suffered, and continue to suffer damages.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

    a. Enter an order requiring the Defendant to take reasonable measures to protect its employees from second-hand smoke;

      b.      Enter an order requiring the Defendant to make informational pamphlets detailing the dangers of second-hand smoke available at Defendant HARRAH'S Health and Wellness Center;

      c.      Enter an order awarding Plaintiff and the class costs and reasonable attorney's fees associated with the prosecution of this action;

      d.      Award any and all further relief provided by law that this Court deems equitable and just.

### JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: July 22, 2009

By: /S/
George Kelesis

Jay Edelson[*]
Rafey Balabanian[*]
Steven Lezell[*]
KAMBEREDELSON, LLC
350 N. LaSalle Ave
Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
* Pro hac vice admittance to be sought

George Kelesis
Marc Cook
Bailus Cook & Kelesis
400 S. 4th St.
Suite 300
Las Vegas, NV 89101
Tel: 702.385.3788
Fax: 702.737.7712